

Empire Die Casting Co., Inc.  
635 East Highland Road  
Macedonia, OH 44056  
Attention: Scott Eisenberg & Richard Rogel

October 9, 2013

Re: *Acquisition of Assets of Empire Die Casting Co., Inc.*

Dear Mr. Eisenberg & Mr. Rogel:

New Growth Capital Group, LLC, for itself or for its assignee or nominee ("Purchaser"), is pleased to submit this proposal ("LOI") for its acquisition (the "Sale") of substantially all assets and business, as a going concern, of Empire Die Casting Co., Inc.("Empire").

This LOI represents an expression of Purchaser's interest and intent to pursue acquisition of the Acquired Assets (defined below) on the principal terms and conditions described herein. However, this LOI is binding only to the extent as set forth in Section 12 below. Consummation of a transaction is subject to the terms, conditions and agreements outlined herein (such acquisition and related transactions and agreements, collectively, the "Transaction").

Purchaser believes it is most favorably positioned to acquire the Acquisition Assets on terms that reflect Empire's current fair value and that serve the best interests of all parties. To that end, Purchaser is prepared to commit the time and resources necessary to make certain structural changes and thereby re-invigorate all facets of Empire's business. However, to render the business viable, Purchaser will be required to make a significant investment of fresh capital, time and effort entailing significant risk. This is in no small part due to Empire's current undercapitalization and what Purchaser understands are unserviceable obligations to the Union Pension Plan. All such factors have been considered in the context of this LOI.

Moreover, a critical component of this Transaction is Empire's "human capital". Purchaser envisions offering fair terms and conditions of employment to those of Empire's employees Purchaser selects on a going forward basis. Purchaser also respects that management, and you as owner, may be an essential component of a successful Transaction.

Purchaser proposes to complete the Transaction on the following terms and conditions:

1. <u>Means of Effecting and Structure of the Transaction</u>. Purchaser requires that all facets of the Transaction, including the Definitive Agreement (defined in section 1(a) below), are approved and thereafter consummated pursuant to an order, satisfactory in form and content to Purchaser (the "Sale Order"), to be entered by the U.S. Bankruptcy Court (the "Bankruptcy Court") having jurisdiction over Empire and its estate in a voluntary case commenced by Empire under chapter 11 of Title 11 (the "Bankruptcy Code") of the United States Code (the "Bankruptcy Case"). Purchaser understands that shortly after its acceptance of this LOI (the

"Petition Date"), Empire intends to commence its Bankruptcy Case and, to effect the Transaction, within three (3) days after the Petition Date file with the Bankruptcy Court its:

(a) motion pursuant to Bankruptcy Code Section 363(f) (the "Sale Motion") for entry of the Sale Order approving the Sale to Purchaser of substantially all Empire's assets as an operating concern (the "Acquired Assets", as further defined in Section 3 below), free and clear of all liens, claims and encumbrances, on the terms of a definitive agreement that incorporates this LOI to be entered into between the parties and that is satisfactory to Purchaser (the "Definitive Agreement") as set forth in Section 8(a)(ii) below, with an opportunity for submission of competitive bids at an auction under Section 363 of the Bankruptcy Code (the "363 Auction") consistent with approved Bid Procedures (as defined in Section 6 below); and

(b) motion (the "Bid Procedures Motion") for expedited approval of the Bid Procedures, including approval of the Break-Up Fee (defined below) and Purchaser's designation as the "stalking-horse bidder" for purposes of the 363 Auction.

2. Purchase Price; Deposit. The purchase price for the Acquired Assets shall be $11.7 million cash, including assumption of the Assumed Liabilities (defined below), if any, as will be more fully set forth in the Definitive Agreement (the "Purchase Price"). The Purchase Price will be subject to Purchaser's normal due diligence and will be adjusted for varying quantities, qualities and values of working capital ("Working Capital") included in the Acquired Assets on the Closing Date (defined below) as compared to such values on Empire's balance sheets and financial statements dated as of August 31, 2013 heretofore delivered to Purchaser (the "Base Line WC Value). As such, the Purchase Price will be adjusted (increased or decreased) based upon the actual book value of the Working Capital as of the Closing Date as compared to the Base Line WC Value, pursuant to an adjustment formula summarized below and as will be contained in the Definitive Agreement.

Ten percent (10%) of the Purchase Price shall be held in escrow pending validation of the value of the Working Capital as of the Closing Date in accordance with GAAP. The validation process will be completed by Empire and Purchaser no later than sixty (60) days after the Closing Date. If the validated book value of the Working Capital at the Closing Date is less than the Base Line WC Value, then the Purchase Price shall be recalculated using such validated book value, and the decrease in the Purchase Price shall be paid from the escrow to the Purchaser and the balance of the escrow, if any, shall be paid to Empire within two (2) days thereafter. If the validated book value of Working Capital at the Closing Date is greater than the Base Line WC Value, then the Purchase Price shall be recalculated using such validated book value, and the increase in the Purchase Price as well as the balance in the escrow shall be paid to Empire within two (2) days thereafter

Upon (a) the Bankruptcy Court's approval of the Bid Procedures, including approval of the Break-Up Fee and Purchaser's designation as the stalking horse bidder for purposes of the 363 Auction, and (b) expiration of the Due Diligence Period (defined in Section 7 below) and Purchaser's satisfaction (in its sole discretion) with the results of its Diligence Investigation

(defined in Section 7 below), Purchaser shall deposit a cash amount with Empire's legal counsel in an amount as determined at that time in good faith by Empire and Purchaser and considering the refined amount of the Purchase Price (the "Deposit"), to be held in such counsel's IOLTA Trust Account as a good-faith deposit pending entry of the Sale Order approving the Sale to Purchaser and consummation of the Transaction. The Deposit would be subject to customary and appropriate escrow terms and conditions satisfactory to Purchaser, and would be non-refundable to Purchaser except in the event that any of the conditions in this LOI, including as will be contained in the Definitive Agreement, are not satisfied to Purchaser's satisfaction, the Bankruptcy Court does not enter the Sale Order approving the Sale to Purchaser, or Empire breaches its obligations under the Definitive Agreement.

3. Acquired Assets. Purchaser would acquire, free and clear of all liens, claims, encumbrances and interests, all of Empire's assets, including, without limitation, all machinery, equipment, raw materials, work in process, inventory, accounts and accounts receivable, real property, including fixtures and improvements, licenses, executory contracts selected by Purchaser, intellectual properties, trade manes, customer lists and agreements, and all other assets and rights owned by Empire used in the operation of Empire's business (the "Business"), as will be more fully set forth in the Definitive Agreement.

4. Excluded Assets. The Acquired Assets will not include any rights or interests in, or any liabilities respecting, any employee collective bargaining agreement, employee retirement or similar pension and/or benefit plans, Empire's corporate record book(s) and related corporate governance material, executory contracts not selected by Purchaser to be assumed and assigned to Purchaser, Empire's claims and causes of action under Sections 544 through 550 and 553 of the Bankruptcy Code, and any assets that Purchaser may determine not to acquire as a result of its Diligence Investigation, as will be more fully set forth in the Definitive Agreement.

5. Assumed Liabilities. Purchaser will assume only the liabilities of Empire that Purchaser may determine to assume as a result of its Diligence Investigation and as are contained in the Definitive Agreement (the "Assumed Liabilities"). Purchaser will not assume any liabilities of Empire or the Business except as may be agreed to in the Definitive Agreement. Empire will be responsible for any cure costs relating to executory contracts included in the Assumed Liabilities.

6. Bid Procedures. Empire shall file its Bid Procedures Motion seeking the Bankruptcy Court's expedited approval of competitive bidding and related procedures respecting Empire's conduct of the 363 Auction in connection with its Sale Motion, including approval of procedures governing the solicitation, review and submission of bids to purchase the Acquired Assets competitive to Purchaser's LOI and Definitive Agreement and procedures governing the 363 Auction, all in form and substance reasonably consistent with such procedures as set forth on Schedule 6 annexed to this LOI (collectively, the "Bid Procedures"). As a required component of the Bid Procedures, Empire shall also seek the Bankruptcy Court's expedited approval of Empire's designation of Purchaser as the "stalking-horse bidder" at the 363 Auction, and approval of the Break-Up Fee (defined in Schedule 6 annexed hereto) as Empire's bankruptcy estate's payment to Purchaser of reimbursement of Purchaser's fees, expenses and costs incurred and expected to be incurred in its efforts to acquire the Acquired Assets and in serving as the stalking horse bidder.

7.  Due Diligence. Purchaser shall have a period of sixty (60) days from Empire's acceptance of this LOI (the "Due Diligence Period") to satisfactorily complete, in its sole discretion, its diligence review of the Acquired Assets (the "Diligence Investigation"). The Diligence Investigation may include (a) meetings with Empire's senior secured lender(s), (b) discussions with Empire's employees, and (c) review of the terms of Empire's executory contracts. In connection with its Diligence Investigation, Purchaser and its counsel, accountants and other representatives and consultants shall have had reasonable opportunity to examine Empire's books and records and to make copies or extracts thereof, to meet and discuss Empire's assets and Business with its officers, key employees, and outside advisors, and Empire shall have reasonably assisted and cooperated with Purchaser in connection with the foregoing. If Purchaser is not satisfied, in its sole discretion, with the results of any of its Diligence Investigation, Purchaser may give written notice to Empire, prior to or on the date of expiration of the Due Diligence Period, that Purchaser is not satisfied with such results and that Purchaser elects to terminate the Transaction, including the LOI and the Definitive Agreement (if executed). Such termination shall not release Empire from its obligations to Purchaser under this LOI that survive such termination.

8.  Conditions Precedent.

(a) Empire's and Purchaser's respective obligations hereunder and to close the Transaction are subject to the satisfaction or waiver by the party or parties to whom the condition benefits of those terms and conditions contained in the Definitive Agreement as are customary for similar transactions, including the following:

(i) The Bankruptcy Court approves agreements between Empire and its senior secured lender(s) (the "Lender") to permit Empire's post-petition use of cash collateral and/or working capital DIP financing necessary to sustain Empire's Business operations as conducted as of the date of acceptance of this LOI, in amounts and on terms reasonably satisfactory to Purchaser (the "DIP Financing");

(ii) Purchaser is satisfied, in its sole discretion, with the results of its Diligence Investigation as provided in Section 7 of this LOI;

(iii) On or before expiration of the Diligence Period, the parties shall have negotiated and executed the Definitive Agreement (the first draft of which shall be prepared by Purchaser's counsel) containing terms and provisions (including, without limitation, representations, warranties, covenants and closing conditions) appropriate and customary for transactions of this nature and satisfactory to Purchaser;

(iv) All Empire's rights and interests under executory contracts that Purchaser identifies in the Definitive Agreement as being required for operation of the Business and thus completion of the Transaction, shall be assumed by Empire and effectively assigned to Purchaser under the Sale Order pursuant Section 365(f) of the Bankruptcy Code;

(v) Empire shall have filed the Sale Motion and the Bid Procedures Motion. Further, the Bankruptcy Court shall have entered order(s) satisfactory in form and content to Purchaser approving (a) the Bid Procedures, including the Break-Up Fee in favor of Purchaser, and (b) Empire's designation of Purchaser as the stalking-horse bidder;

(vi) Prior to the Closing Date, Purchaser shall be satisfied, in its sole discretion, with all audits and reviews of the condition of the real property included in the Acquired Assets, including with the results of any Phase I and/or Phase II environmental audits that exist and/or that may be commissioned by Purchaser, and that Purchaser shall obtain commitment(s) for owner's title insurance in favor of Purchaser containing terms and conditions satisfactory to Purchaser;

(vii) Prior to the Closing Date Purchaser shall have reached agreement satisfactory to Purchaser, in its sole discretion, respecting the terms of employment by Purchaser of any of Empire's employees as reasonably determined by the Purchaser to be necessary in connection with Purchaser's operation of the Acquired Assets, including Purchaser having reached agreement with (a) Richard Rogel on terms and conditions of a consulting arrangement satisfactory to Purchaser in its sole discretion and (b) those of Empire's unionized employees to whom Empire elects to offer employment that are on terms and conditions of employment that in the aggregate constitute an economic and cost basis, including wages and benefits, satisfactory to Purchaser in its sole discretion;

(viii) Prior to the Closing Date, Purchaser shall be satisfied, in its sole discretion, that it will not be subject to claims by Empire's creditors, including specifically by the Union representing Empire's non-managerial employees and/or by the Union Pension Plan, that it is a successor of Empire for any purpose whatsoever;

(ix) Purchaser shall have been the successful prevailing bidder at the 363 Auction and the Bankruptcy Court shall have entered the Sale Order approving the Sale of the Acquired Assets and Business to Purchaser, free and clear of all liens, claims, encumbrances and interests, which Sale Order shall be final and nonappealable and not subject to any stay;

(x) Empire shall have been operated from the date of acceptance of this LOI until the Closing Date in substantially the same manner as it is being operated at the date hereof and, except as relates to the Excluded Assets or as contemplated by this LOI, no dispositions of assets or other material transaction shall have been effected by Empire which would have or would reasonably be likely to have an adverse effect on the Acquired Assets or the Business;

(xi) Except for the conditions to closing as set forth herein, there is no financing condition or contingency to Purchaser's payment of the Purchase Price,

provided that Purchaser reserves the right to fund the Purchase Price payable on the Closing Date by means of debt and/or equity financing that prior thereto Purchaser may secure, in which event Empire shall have reasonably cooperated with Purchaser's proposed lender(s) and/or equity investors in connection therewith;

(xii) As of the Closing Date, there shall not have occurred nor shall there be threatened to occur any occurrence or event that has caused or is likely to cause material damage to or have a material adverse effect on the Business as presently conducted or on any of the Acquired Assets; and

(xiii) Empire shall have met the following milestones:

(1) Approval by the Bankruptcy Court of the Bid Procedures no later than the date sixty (60) days after the date of Empire's acceptance of this LOI (the "Procedures Approval Date");

(2) The Bankruptcy Court's entry of the Sale Order approving the Sale of the Acquired Assets to Purchaser no later than the date forty five (45) days after the Procedures Approval Date; and

(3) Closing of the Sale under the Definitive Agreement no later than the date sixty (60) days after the Procedures Approval Date.

9. Exclusive Dealing. In order to induce Purchaser to expend time and resources in connection with the Diligence Investigation and negotiation of the Definitive Agreement, Empire agrees that, upon acceptance of this LOI and until the date the Bankruptcy Court shall approve the Bid Procedures and Break-Up Fee (such period, the "Exclusivity Period"), Empire will not, and will cause its officers, directors, employees, investment banker(s), financial advisors and other agents to not, directly or indirectly, encourage, solicit, or initiate discussions or negotiations with any person or group (collectively, the "Prohibited Activities"), in connection with, or which may be reasonably expected to lead to, any acquisition or purchase of any material portion(s) or substantially all of the Acquired Assets, or any equity interest in Empire or any merger, consolidation, business combination, sale of substantially all assets, sale of securities, recapitalization, liquidation, dissolution or similar transaction involving Empire (other than the Transaction contemplated by this LOI), the consummation of which would or could reasonably be expected to impede, interfere with, prevent or materially delay the Transaction contemplated by this LOI (an "Alternative Transaction").

10. Expenses. Except as provided for in the Bid Procedures with respect to the Break-Up Fee, Empire and Purchaser shall each pay their respective fees and expenses, including, without limitation, all such legal, accounting, regulatory and due diligence fees and expenses incurred in connection with the Transaction.

11. **Public Announcements; Confidentiality.** Except in connection with Empire's commencement of its Bankruptcy Case, or filing of the Sale Motion, the Bid Procedures and the 363 Auction, neither Empire nor Purchaser shall make any press release or other public statement concerning the matters covered by this LOI, unless the parties mutually agree or unless the disclosing party deems upon advice of counsel that disclosure is required by applicable law. Empire and Purchaser shall each use all commercially reasonable efforts to permit the other party an opportunity to review and comment upon any release or statement prior to dissemination (and any mention of any other party in such release or statement shall be reasonably acceptable to such party). Except as aforesaid, and except for Empire's delivery of this LOI to its Lender, neither Empire nor Purchaser shall disclose the contents of this LOI or the fact that the parties have had any discussion regarding a potential transaction, without the prior written consent of the other party.

12. **Binding Effect.** It is understood that this LOI constitutes a statement of our mutual intention and does not contain all the matters upon which agreement must be reached for the proposed Transaction to be consummated. Accordingly, except with respect to paragraphs 9, 10, 11, and 12, this LOI does not constitute a legally binding agreement. Paragraphs 9, 10, 11, and 12 are intended to be legally binding agreements between Empire and Purchaser. Except as set forth in this paragraph 12, a legally binding agreement with respect to the proposed Transaction will result only from the due authorization, execution and delivery of the Definitive Agreement by all relevant parties.

13. **Miscellaneous.** This LOI may be executed in one or more counterparts, each of which will be deemed to be an original copy of this LOI, and all of which, when taken together, shall be deemed to constitute one and the same agreement. The exchange of copies of this LOI and of signature pages by electronic mail or facsimile transmission shall constitute effective execution and delivery of this LOI as to the parties and may be used in lieu of the original LOI for all purposes. Signatures of the parties transmitted by electronic mail or facsimile shall be deemed to be their original signatures for any purpose whatsoever. The terms of this LOI shall be governed by the internal laws of the State of Ohio, without regard to conflict of laws principles.

Balance of Page Intentionally Left Blank

If the foregoing correctly sets forth Empire's understanding with respect to the subject matter hereof, please so indicate by executing and returning to the undersigned the enclosed copy of this LOI. This LOI shall expire if not accepted by Empire by 5:00 p.m. Eastern on October 17, 2013.

Very truly yours,

NEW GROWTH CAPITAL GROUP, LLC

_(signature)_

Carl J. Harbert

ACCEPTED AND AGREED TO AS OF
THE DATE FIRST ABOVE WRITTEN:

EMPIRE DIE CASTING CO., INC.

By: _Richard P. Rogel_
Name: _Richard P. Rogel_
Title: _CEO_
10/10/2013

## SCHEDULE 6

### Bidding Procedures

Empire (for purposes of the Bidding Procedures, hereinafter "Seller") agrees to seek entry of the Bid Procedures Order approving the following bidding and other procedures respecting the Sale (collectively, the "Bidding Procedures"):

(a) Solicitation Process; Distribution of Bidding Procedures and Definitive Agreement. Seller shall distribute (i) the Sale Notice (defined below), (ii) these Bidding Procedures and (iii) a copy of Purchaser's Definitive Agreement (as such, the "Stalking Horse APA") as required by the Bankruptcy Court in connection with the Sale Motion.

(b) Eligibility of Bidders to Participate in Auction. In order to be eligible to bid for the Acquired Assets or otherwise participate in the Auction (defined below), each bidder must be determined by Seller upon consultation with Seller's Lender and any Official Committee of Unsecured Creditors appointed in the Bankruptcy Case to be a "Qualifying Bidder" (defined below). Seller shall have the right, in consultation with the Lender, to determine whether a bidder is a Qualifying Bidder (a bid being submitted by a bidder determined to be a Qualifying Bidder and to have otherwise satisfied the requirements of paragraph (c) below being a "Qualifying Bid").

(c) Qualification of Bidders. In order to be considered for status as a Qualifying Bidder, a bidder (other than Purchaser and the Lender, who are each deemed to constitute a Qualifying Bidder having submitted a Qualifying Bid) must:

   (i) Deliver to Seller's counsel at [address], so as to be received by Seller's counsel before **5:00 p.m. (Eastern Time) on** _____, 2013 (the "Bid Deadline"), a written offer or group of offers (a "Qualifying Bid") that:

      (1) consists of an executed form of the Stalking Horse APA, marked to show any proposed revisions, which is acceptable to Seller, that provides for the purchase of the Acquired Assets, and clearly specifies the amount such bidder is willing to pay, which amount must be at least $250,000.00 greater than the Purchaser's Purchase Price contained in the Stalking Horse APA (such aggregate amount, the "Minimum Upset Bid") (such bidder's executed APA, the "Bidder APA");

(2) does not contain any contingencies to the validity, effectiveness, and/or binding nature of the bid beyond those contained in the Stalking Horse APA, including, without limitation, contingencies for due diligence, financing of any kind or inspection;

(3) contains documentation acceptable to Seller upon consultation with the Lender and any Official Committee of Unsecured Creditors evidencing that the bidder has financial resources sufficient in the aggregate to finance the purchase of the Acquired Assets proposed to be acquired and close the transaction within the time frame established, which evidence may include, without limitation, evidence of cash on hand, a binding financing commitment from an established and financially sound financial institution or investment fund and the identity of contact persons at the entity issuing such commitment letter;

(4) demonstrates, to Seller's satisfaction upon consultation with the Lender and any Official Committee of Unsecured Creditors, that the bidder has the legal capacity to consummate the transaction it is proposing;

(5) includes a statement from the bidder that (i) it is prepared to enter into and consummate the transactions contemplated in the Bidder APA immediately upon entry by the Bankruptcy Court of an order approving the sale of the Assets to such bidder (the "<u>Bidder Sale Order</u>"), but in no event later than _____ \_\_, 2013, provided there has been no order entered staying the Bidder Sale Order pending appeal and (ii) the Qualifying Bid is irrevocable through [Auction Date]; and

(ii) Before the Bid Deadline, pay an earnest money deposit of ten percent (10%) of the Minimum Upset Bid and any other consideration contained in the Bidder APA (a "<u>Qualified Bidder Deposit</u>") by cashier's or certified check (made payable to Seller's legal counsel) or wire transfer of immediately available funds, which deposit shall be held in escrow in Seller's legal counsel's IOLTA Trust Account in accordance with the terms of an escrow agreement to be provided by Seller. A Qualified Bidder Deposit will be refunded only if the bid corresponding with the Qualified Bidder Deposit is not approved by the Bankruptcy Court. Seller reserves the right to hold each Qualified Bidder Deposit until five (5) days after the closing of the sale of the Acquired Assets.

(d) <u>Bids for Less than All Acquired Assets</u>. Subject to the other terms and conditions of these Bidding Procedures, bids for less than all of the Acquired Assets may be submitted and may be eligible to become Qualifying Bids.

(e) <u>Denial of "Qualifying Bid" Status to Non-Conforming Bids</u>. At Seller's discretion, in consultation with the Lender and any Official Committee of Unsecured Creditors, Seller may decline to accept as Qualifying Bids any bids that do not substantially conform to the foregoing requirements and any other procedures set forth in the Bid Procedures Order. Seller shall have the right to negotiate with any bidder solely with respect to clarification of any such bid, but not any other terms.

(f) <u>Bid Deadline; Reporting of Qualifying Bids</u>. **All Qualifying Bids must be submitted to Seller so as to be received not later than the Bid Deadline.** After the expiration of the Bid Deadline, Seller's counsel shall promptly provide copies of all bids received to (i) counsel for the Lender, (ii) counsel for any Official Committee of Unsecured Creditors, and (iii) counsel for Purchaser. If Seller's counsel does not receive any Qualifying Bids by the Bid Deadline, Seller's counsel shall report the same to the Bankruptcy Court.

(g) <u>Access to Seller's Books and Records; Execution of Confidentiality Agreement</u>. As a condition precedent to being provided access to Seller's books, records and executives, all bidders must (i) be determined by Seller and Lender to have sufficient financial capability to submit a Qualifying Bid and (ii) execute a confidentiality agreement in form reasonably acceptable to Seller. Bidders who satisfy the foregoing requirements will be given reasonable access to the Seller's books, records and executives.

(h) <u>Terms of Auction</u>. In the event that one or more Qualifying Bids are submitted in accordance with these Bidding Procedures, Seller will conduct an auction sale of the Assets (the "Auction") on the following terms:

  (i) <u>Time, Date and Location of Auction; Adjournment of Auction; Appearance of Qualifying Bidders at Auction</u>. The Auction will take place on a date and at such time no more than two (2) business days prior to that date scheduled by the Bankruptcy Court for hearing (the "<u>Sale Hearing</u>") to consider the Sale Motion. The Auction will take place at the offices of the Seller's counsel or at such other place as may be designated in writing by Seller. Seller, upon consultation with the Lender and any Official Committee of Unsecured Creditors, may continue or adjourn the Auction from time to time without further notice in its sole discretion. For a Qualifying Bid to be considered, the corresponding Qualifying Bidder must appear in person at the Auction unless alternative

arrangements are agreed upon in advance with Seller and the Lender.

(ii) <u>Permitted Attendees at Auction</u>. Only representatives of Seller, the Lender, the Official Committee of Unsecured Creditors, any other parties invited specifically by the Seller, and any Qualifying Bidders (and the professionals for each of the foregoing) shall be entitled to attend the Auction, provided, however, that only Qualifying Bidders shall be entitled to bid at the Auction.

(iii) <u>Auction Bid Submission Procedures</u>. Auction bidding shall be subject to the following procedures:

(1) In order to bid at the Auction, Qualifying Bidders must appear in person at the Auction, or through a duly authorized representative.

(2) Only Qualifying Bidders shall be entitled to make any subsequent bids at the Auction.

(3) Bidding will commence with the announcement of the highest and best Qualifying Bid as determined by Seller and the Lender. Any Qualifying Bidder may then submit successive bids in minimum increments of not less than $100,000.00 (the "<u>Minimum Overbid Amount</u>"); *provided, however*, that any successive bid by the Purchase may include a credit of $180,000.00, reflecting the amount of the Break-Up Fee (defined below).

(4) If one or more Qualifying Bids are received by Seller, each such Qualifying Bidder shall have the right to improve its respective bid(s) at the Auction.

(5) Each successive bid submitted by any bidder at the Auction must contain an actual cash purchase price that exceeds the then existing highest bid by at least the Minimum Overbid Amount.

(6) At commencement of the Auction, Seller may announce procedural and related rules governing the Auction not inconsistent with these Bidding Procedures, including time periods available to all Qualifying Bidders to submit successive bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

(iv) <u>Irrevocability of Bids; Rejection of Bids</u>. All Qualifying Bids and successive bids at the Auction shall be irrevocable until thirty (30) days after the closing of the sale of the Acquired Assets. Formal

rejection by Seller of a Qualifying Bid or any successive bid thereto will not be deemed to have occurred unless and until (a) Seller expressly rejects such bid or (b) the sale of the Acquired Assets to the bidder submitting the Prevailing Bid (defined below) is finally consummated.

 (v)  <u>Selection of Prevailing Bid</u>. The Auction shall continue until there is only one bid to purchase the Acquired Assets that Seller determines, in consultation with the Lender, and subject to Bankruptcy Court approval, is the highest and/or best Qualifying Bid (such bid being the "<u>Prevailing Bid</u>" and such bidder being the "<u>Prevailing Bidder</u>"). In making this decision, Seller shall consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of such Qualifying Bidder's ability to close the transaction and the timing thereof, and the net benefit to Seller's estate. The Prevailing Bidder shall have such rights and responsibilities of the buyer, as set forth in the Bidder APA. Prior to the Sale Hearing, the Prevailing Bidder shall complete and execute the Bidder APA and all other agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Prevailing Bid was made (such documents being, collectively, "<u>Prevailing Bidder Sale Documents</u>"). Notwithstanding the foregoing, Seller, in consultation with the Lender, and subject to Bankruptcy Court approval, shall have the right, but not the obligation, to accept more than one Prevailing Bid to purchase separate portions of the Acquired Assets.

(i)  <u>Sale Hearing</u>. In connection with Seller's filing of the Sale Motion, Seller will request that the Bankruptcy Court schedule the Sale Hearing to consider approval of the Sale Motion, with notice thereof in accordance with applicable sections of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of the Bankruptcy Court. The Sale Hearing will be held at the United States Bankruptcy Court for the Northern District of \_\_\_\_\_ at _____, Courtroom \_\_. At the Sale Hearing, Seller will seek the entry of the Sale Order approving and authorizing the proposed sale to the Purchaser or to the Prevailing Bidder, if any. The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing.

(j)  <u>Closing</u>. The closing of the sale of the Acquired Assets will occur no later than _____ \_\_, 2013, in accordance with the terms of the Prevailing Bidder Sale Documents or the APA of the entity otherwise authorized by the Bankruptcy Court to purchase the Acquired Assets, as applicable.

(k)  <u>Failure of Prevailing Bidder to Consummate Purchase; Designation of Backup Bidder</u>. If for any reason the Prevailing Bidder fails to

consummate its purchase of the Acquired Assets, Seller may deem the bidder of the second highest and best bid for the Acquired Assets (such bidder being the "Backup Bidder," with such bid being the "Backup Bid") to have submitted the Prevailing Bid. If Seller so designates a bidder as a Backup Bidder, such Backup Bidder shall be required to complete and execute an APA in form and substance reasonably acceptable to Seller memorializing, among other things, the amount of the Backup Bid (a "Backup Bidder APA"). If the failure by the Prevailing Bidder to consummate the purchase is the result of such Prevailing Bidder's breach of, or default or failure to perform under any Prevailing Bidder Sale Documents or the terms of these Bidding Procedures (such bidder being a "Defaulting Bidder"), such Defaulting Bidder's Qualified Bidder Deposit shall be forfeited to Seller, and Seller shall thereupon have the right to assert all rights and remedies available under applicable law.

(l) <u>Determination of Cure Amounts under Assigned Leases and Contracts</u>. As soon as reasonably possible after the filing of the Bid Procedures Motion, Seller shall prepare and shall make available to all interested parties a schedule of Seller's leases and other executory contracts that a bidder may request that Seller assume and assign to such bidder under such bidder's Bidder APA (such leases and contracts being, collectively, the "Assigned Leases and Contracts"), which schedule shall include Seller's calculation of the amount it believes must be paid to cure all defaults under each of the Assigned Leases and Contracts (collectively, the "Cure Amounts"). Seller shall file such schedule with the Bankruptcy Court and shall serve a copy thereof on all non-debtor parties to such Assigned Leases and Contracts. ANY NON-DEBTOR PARTY TO AN ASSIGNED LEASE OR CONTRACT WHO DISPUTES SUCH CALCULATION MUST (i) FILE WITH THE BANKRUPTCY COURT A WRITTEN CLAIM ASSERTING A CURE CLAIM THAT IS DIFFERENT FROM THE RESPECTIVE CURE AMOUNT ON OR BEFORE ANY BAR DATE SET BY THE BANKRUPTCY COURT FOR THE FILING OF SUCH CLAIMS; AND (ii) FILE WITH THE BANKRUPTCY COURT AND SERVE UPON COUNSEL FOR SELLER, AT_____, AN OBJECTION TO ITS SCHEDULED CURE AMOUNT ON OR BEFORE THE DATE OF THE SALE HEARING. ANY NON-DEBTOR PARTY TO AN ASSIGNED LEASE OR ASSIGNED CONTRACT WHO FAILS TO COMPLY WITH THE FOREGOING REQUIREMENTS SHALL BE FOREVER BARRED FROM (i) OBJECTING TO THE CURE AMOUNT APPLICABLE TO THAT PARTY'S ASSIGNED LEASE OR CONTRACT AND (ii) ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO THAT PARTY'S ASSIGNED LEASE OR ASSIGNED CONTRACT. If an objection to a scheduled Cure Amount is filed in accordance with this paragraph, the Bankruptcy Court will hear that objection at the Sale Hearing.

(m) Reservation of Rights; Deadline Extensions. Subject to the consent of the Lender, Seller shall be deemed to have reserved its rights to: (i) cancel the Auction; (ii) subject to the consent of the Lender, extend the Bid Deadline; (iii) impose such other and additional terms and conditions or modify the terms and conditions hereof as Seller determines to be in its best interests and (iv) reject all Qualifying Bids if, in Seller's reasonable business judgment, no Qualifying Bid is in the best interests of Seller's estates.

(n) Sale of Acquired Assets "As-Is, Where-Is". All of the Acquired Assets shall be transferred on an "as-is, where-is" basis. SELLER SHALL BE DEEMED TO HAVE EXPRESSLY DISCLAIMED ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY OF THE ACQUIRED ASSETS, EXCEPT AS MAY OTHERWISE BE PROVIDED IN THE APPLICABLE APA OR PREVAILING BIDDER SALE DOCUMENTS.

(o) Purchaser as Stalking Horse Bidder; Break-up Fee. By Order of the Bankruptcy Court, the Court has approved a $180,000.00 reimbursement fee ("Break-Up Fee") payable to Purchaser in the event Purchaser is outbid at the Auction. No Qualifying Bidder, other than Purchaser, shall be entitled to any break-up fee, expense reimbursement or similar type of payment.

## Break-Up Fee

Purchaser's agreement to purchase the Acquired Assets pursuant to the Definitive Agreement is conditioned upon the Bankruptcy Court's prior approval of the above Bidding Procedures, including specifically approval of the Break-Up Fee.

The Break-Up Fee will be payable only in the event that (i) all of the conditions to Purchaser's obligation to close its purchase of the Acquired Assets under the Definitive Agreement have been satisfied and/or waived and the Definitive Agreement has not been terminated prior to the Auction, (ii) a Qualifying Bid (defined above) is submitted by a third-party Qualifying Bidder (defined above) (i.e., other than Purchaser's Qualifying Bid) prior to the Auction, (iii) anyone other than Purchaser is determined by an order of the Bankruptcy Court to be the Prevailing Bidder (defined above) approved to purchase any or all of the Acquired Assets and (iv) the Definitive Agreement has not previously terminated as the result of an uncured breach by Purchaser.

Purchaser's willingness to proceed with the Definitive Agreement is conditioned upon the Bankruptcy Court's entry of the Bid Procedures Order approving the Break-Up Fee.

Upon Bankruptcy Court approval of a sale of any or all of the Acquired Assets to a Prevailing Bidder that is not Purchaser, and assuming no prior breach by Purchaser, Seller shall be obligated to pay Purchaser the Break-Up Fee. Purchaser's right to payment of the Break-Up Fee,

if it arises, shall be treated as an allowed administrative expense pursuant to Bankruptcy Code sections 503(b) and 507(a)(2), shall not be subject to any liens or security interests, and shall be approved by the Lender as a "carve-out" from the proceeds of sale of the Acquired Assets. Purchaser shall be authorized to credit-bid the Break-Up Fee in connection with the Auction if Purchaser determines to submit a competing Qualified Bid to any competing bid that may be submitted by another Person that is equivalent to Purchaser's Purchase Price plus the Minimum Overbid (defined above).